Nicholson, C. J.,
delivered tbe opinion of tbe court:
G-. W. .Fuchart made affidavit before Judge Flippin, that one W. D. Davenport lias been for years keeping and maintaining a bawdy bouse at No. 44 "Washington street, in Memphis, and be is now doing tbe same; that be has frequently been indicted in tbe criminal court, and been frequently convicted, and even orders of abatement against bis bouse have been made by said court. Tet tbe said Davenport still continues tbe guilty practices. Therefore, affiant asks that he be put under bonds for good behavior, to tbe end that be may no longer continue tbe aforesaid business.
Judge Flippin thereupon issued his warrant, directing the sheriff to apprehend tbe said W. D. Davenport, and to bring him before him to answer tbe premises.
*593 Tbis warrant was executed by arresting Davenport and bringing him before E. B. Miller, justice of the peace, for trial, the 13th of November, 1875.
The cause was tried by E. B. Miller, justice of the peace, who rendered the following judgment: “It is considered" by me that the defendant is guilty of keeping a bawdy house, as charged in the warrant — that is, that he has-knowingly rented a house to be kept as a bawdy house, and that the house has been so used while the defendant occupied a part of said house so rented and so occupied; and that he be committed to the jail of Shelby county, unless he will enter into recognizance yuth sufficient securities, in the sum of $1,000, for his good behavior for the term of six months.
(Signed) E. B. Milleb, J. P.”
Prom this judgment defendant prayed for an appeal to the criminal court, which was refused. Thereupon defendant applied by petition to Judge Plippin for writs of cer-tiorari and supersedeas, which were granted.
After the cause was brought into the criminal court, the defendant moved to quash the proceedings before the justice, and to arrest the judgment. This motion was overruled by the court.
Thereupon the district attorney moved the court to dismiss the writs of certiorari and supersedeas, which motion was sustained, and the judgment remanded to the justice of the peace for execution.
Prom this judgment the defendant appealed to this court.
The question for decision in this case is whether the justice of the .peace, upon finding the defendant guilty of keeping a bawdy house, had the power to imprison him in the jail in default of his giving a good behavior bond.
The constitution of the state protects every man from being deprived of his life, liberty, or property except by the judgment of his peers or the law of the land: and a *594 prosecution by indictment or presentment by an impartial jury trial is secured to him. [See Const., art. 1, secs. 8 and 9, and notes.]
The judgment in question is on its face and by its own ’recitals, a palpable violation of these fundamental principles. The recital is, that the defendant is guilty of keeping a bawdy house, as charged in the warrant, and that he be committed to jail, unless he give sufficient security for bis good behavior for six months.
When the justice of the peace became satisfied by the proof that defendant was guilty of keeping a bawdy house, his only power was to bind him over to court, or on his failure to give bond for his appearance at court, to commit him to jail, to secure his appearance to answer the state upon indictment or presentment, where the question of his guilt would be determined by a jury, and his punishment assessed by the court, under the law.
Instead of pursuing the plain requirement of the statute, the justice of the peace has found the defendant guilty, and ordered him to jail, unless he should give bond for his good behavior, assuming to make his judgment final by refusing an appeal.
But it is argued that when the justice of the peace found the defendant guilty of keeping a bawdy house, he did not order him to jail in default of giving a $1,000 bond for his good behavior, by way of punishing him for the offense of which he was found guilty — this it is conceded the justice of the peace had no power to do — but that the justice of the peace had a right to assume that defendant would continue to maintain his bawdy house in defiance of the punishment affixed by law to his offense, and, therefore, by way of preventive justice, the justice of the peace had the power, instead of binding defendant over to court, to send him to jail on default of his giving the required bond, for the purpose of preventing a repetition of the offense.
It might probably bo conceded that measures of pre *595 ventive justice, properly defined and administered, would contribute even more to tbe reformation of evil practices than punitive judgments. But to leave the selection of the measures and their enforcement to a single justice of the peace, or any other civil magistrate, would involve the exercise of a discretionary power, dangerous to the liberties of the accused, and at war with all our ideas of certainty in the administration of criminal law.
Before we can sanction the exercise of the power resorted to in the present case, we must require the production of the law which authorizes it. Certainly no, such power is conferred upon the justices of the peace by any statute of the state. We have statutes for administering preventive justice in regard to offenses against the person or property of another, but they do not embrace of keeping a bawdy house, and the fact that the offense is not so embraced furnishes presumptive authority that the legislature did not intend to subject this offense to other than presumptive measures.
Tt has been argued with much earnestness that there may be found amid the buried ruins of the common law authority for conceding to justices of the peace this power of preventive justice, attempted to be exercised in the present case. But the researches of the learned counsel into the antiquities of the law have been unsuccessful in bringing to light any such long forgotten and obsolete power. And if any such discovery had been made, we should be compelled to decline to breathe life into it by judicial recognition and adoption. We think it more be-r coming in the courts to administer and execute the law than to undertake to find and adopt it amid the rubbish of long lost legal learning.
We are satisfied that the judgment rendered in this case by the justice of the peace was unauthorized and null and void, and that the criminal judge erred in refusing to quash it, and in dismissing the certiorari and supersedeas, and in both respects his rulings are reversed.